IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FEDERAL REPUBLIC OF NIGERIA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:21-CV-572-ECM ) [WO] ) |
| ALABAMA STATE UNIVERSITY, *et al.*, | ) ) ) ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Before the 2013–14 academic year, the Federal Republic of Nigeria ("Nigeria") agreed to provide some of its citizens full-ride scholarships to Alabama State University. ("ASU").  Several dozen Nigerian citizens subsequently enrolled at ASU, and Nigeria began footing the bill.

Chaos ensued, and now Nigeria seeks some of that money's return.  ASU and its officials moved to dismiss, arguing, among other things, that they are immune from suit. Because the Court finds that the parties are immune in their official capacities, but not in their individual capacities, the motion is due to be GRANTED in part.

## II. BACKGROUND

In 2013, Nigeria entered an agreement with ASU to pay the entire cost of attendance for some number of Nigerian citizens. For the next several years, Nigeria wired to ASU payments earmarked for those citizens' tuitions, fees, textbooks, and other personal expenses. The funds were placed in students' accounts for their use.

Shortly thereafter, a dispute arose between Nigeria, ASU, and the students over how to handle funds that exceeded a student's owed expenses. ASU purportedly applied the funds left over in students' accounts to cover expenses unrelated to the Nigerian students.[1] Nigeria disagreed with that approach, and instead directed ASU to refund any excess funds directly to the students themselves. According to Nigeria, ASU refused to do so.[2]

Unable to access money they believed theirs, the students sued ASU, alleging a variety of state and federal claims.[3] They also added Nigeria as a necessary party, seeking only confirmation that their position was correct: that *they*—rather than the Nigerian government—were entitled to payment of the excess money. During the litigation, the

---

[1] Nigeria attached to its complaint the Eleventh Circuit opinion in the prior case brought by the Nigerian students (discussed in just a moment). (*See* Doc. 15-4). That opinion tells a story both more detailed and more nuanced than the one Nigeria tells the Court now. In the Eleventh Circuit's telling, Nigeria did not apply the excess funds to expenses wholly unrelated to the students, but rather used the excess funds to "defray the cost of outstanding payments Nigeria still owed the university." *Jumbo v. Ala. State Univ.*, 760 F. App'x 918, 919 (11th Cir. Jan. 30, 2019).

[2] Another discrepancy: the former suit indicates that ASU did not refuse to refund the students, but rather informed Nigeria that there was *not* any excess money to refund because Nigeria had been late in paying funds to the university.

[3] More specifically, the students first sued ASU and Nigeria alleging only several state law claims. That initial lawsuit was dismissed for a lack of jurisdiction. *See Jumbo v. Ala. State Univ.*, 2016 U.S. Dist. LEXIS 188117 (M.D. Ala. July 6, 2016). The students refiled, adding a claim for national origin discrimination under Title VI of the Civil Rights Act of 1964. *See Jumbo*, 760 F. App'x at 920.

court ordered ASU to remit to it the entire excess balance (roughly $202,000), which it would hold until the litigation concluded. ASU did so.

Like most do, the litigation did indeed conclude: the court awarded ASU summary judgment on the students' discrimination claim and declined to exercise supplemental jurisdiction over the students' state law claims. However, the court withheld final judgment, and instead ordered the parties to advise it as to how it should distribute the excess funds ASU deposited to its registry. ASU responded within the week, explaining that "the residual [funds] are owed to the Nigerian government." Alabama State University's Advisement Regarding the Money Deposited in the Registry of the Court at 2, *Jumbo v. Ala. State Univ.*, 2:16-cv-702-KS, doc. 109 (M.D. Ala. May 7, 2018).[4]

Nigeria did not provide substantive guidance—rather, its attorney explained that she contacted Nigeria, and would provide further guidance when she received it. Nothing indicates she ever did so. Instead, a month later (and two months after its initial summary judgment order), the court ordered the money remitted back to ASU. It explained that since it had not received guidance from Nigeria, and since no dispute between ASU and Nigeria was before it to adjudicate, it could only determine that ASU was entitled to the funds. If

---

[4] Though Nigeria asserts that ASU made representations to the court in the students' case that the excess funds belonged to Nigeria, (*see* doc. 15, para. 27), it did not attach those representations to its complaint. Nevertheless, the Court may at any time take judicial notice of any "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). The Court here takes judicial notice of the public documents in the previous litigation, which it may properly do without converting this motion to dismiss to one for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (allowing judicial notice on a motion to dismiss without converting the motion to one for summary judgment); *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. Apr. 18, 2006) (explaining that "[p]ublic records are among the permissible facts that a district court may consider" when taking judicial notice while reviewing a motion to dismiss).

Nigeria thought that the funds were its own, said the court, Nigeria could "file whatever action it deems necessary." (*See* Doc. 15-3 at 2).

And so Nigeria did.[5] It now brings seven total claims against ASU and several of its officials. Against ASU itself, Nigeria asserts claims of declaratory judgment, accounting, unjust enrichment, conversion, and negligent or wanton hiring, retention, monitoring, and supervision of its officials. It seeks incidental, compensatory, consequential, and punitive damages, attorneys' fees, an order directing ASU to provide Nigeria with a full accounting of the money as well as the money itself, and an order declaring that the funds are held in constructive trust by ASU for Nigeria.

Nigeria also asserts claims against ASU's president, Dr. Quintin Ross, Jr. ("Ross"), ASU's Vice President of Business and Finance, William Hopper ("Hopper"), and ASU's Comptroller, Alondrea Pritchett ("Pritchett"), in their individual and official capacities. Against all three, it brings a claim of unjust enrichment. It further alleges that Ross negligently or wantonly hired, retained, monitored, and supervised Hopper and Pritchett, and that Hopper did the same to Pritchett. The Defendants moved to dismiss, arguing a variety of theories for why they are immune.

---

[5] Nigeria's counsel here attempted to solve the matter without resorting to litigation, notifying ASU that per Nigeria's instructions, it could send the excess funds to him directly. (*See* Doc. 15-6 at 2). ASU's counsel refused to do so, instead representing that the excess funds had "been credited against the attorney fees and expenses incurred in defense of [the] idiotic lawsuit filed by and/or on behalf of the thirty-seven (37) Nigerian scholarship students." (Doc. 15-7 at 3).

4

## III.   ANALYSIS

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all facts alleged in the complaint as true and "construe them in the light most favorable to [the plaintiff]." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012) (citation omitted).  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court must take factual assertions as true, it does not have to take as true legal conclusions that lack further factual support. *Id.* at 678.  Nor is it required to take as true "legal conclusion[s] couched as . . . factual allegation." *Id.* (quotations and citation omitted).

The Defendants first argue that ASU, and its officials in their official capacity, are immune from suit under the Eleventh Amendment as an official governmental arm of the State of Alabama.  Nigeria disagrees, arguing that because, pursuant to statute, Alabama promises to pay judgments against its officials, ASU (or any ASU official) is not properly considered an arm of Alabama.

The Eleventh Amendment removes from the "Judicial power of the United States . . . any suit in law or equity, commenced or prosecuted against one of the United States by . . . subjects of any Foreign State." U.S. CONST. amend. XI.  Though not expressly barred by the Amendment's text, Eleventh Amendment immunity has been construed to protect against suits brought by foreign states against States of the Union without that State's consent. *See Monaco v. Mississippi*, 292 U.S. 313, 330 (1934) ("As to suits brought

5

by a foreign State, we think that the States of the Union retain the same immunity that they enjoy with respect to suits by individuals[.]"). The State itself need not be a named defendant—rather, such protection extends to "arm[s] of the State . . . which includes agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (quotations and citations omitted). Whether any given defendant is an "arm of the State" "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* (citation omitted).

Viewed in that light, courts consistently agree that Alabama state universities are arms of the State of Alabama and thus granted Eleventh Amendment immunity. *See, e.g.*, *Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir. 1985) (finding that Troy State University is an arm of Alabama); *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1327–28 (M.D. Ala. 2013) (finding that Auburn University Montgomery is an arm of Alabama); *Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084, 1087–88 (N.D. Ala. 2003) (finding that the University of Alabama, and its President, are arms of Alabama); *Davis v. Ala. State Univ.*, 613 F. Supp. 134, 139–40 (M.D. Ala. 1985) (finding that Alabama State University is an arm of Alabama). Alabama courts also make clear that Alabama considers its state universities extensions of itself. *See, e.g.*, *Vandenberg v. Aramark Educ. Servs., Inc.*, 81 So. 3d 326, 332 (Ala. 2011) (explaining that Alabama extends its own state constitutional immunity to "the state's institutions of higher learning and [has] held those institutions absolutely immune from suit as agencies of the State" (quotations and citations omitted)); *Ala. State Univ. v. Danley*, 212 So. 3d 112, 122–25

6

(Ala. 2016) (detailing the extensive immunity protections for universities under Alabama state law).

The Court sees no reason here for a different conclusion. ASU is an arm of Alabama, and thus entitled to Eleventh Amendment immunity.[6] And since "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted), the Eleventh Amendment also protects Ross, Hopper, and Pritchett in their official capacities.

Thus, Nigeria can maintain this suit against ASU and its officials in their official capacity only if Alabama has waived its immunity or if Congress has abrogated it by appropriate legislation. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). Neither has occurred. First, Alabama's own constitution makes clear that it is immune from suit, and that that protection cannot be waived. *See* ALA. CONST. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (noting the parties "d[id] not contend that Alabama has consented to this suit, and it appear[ed] that no consent could be given under Art. I, § 14 of the Alabama Constitution"); *Larkins v. Dep't of Mental Health & Mental Retardation*, 806 So. 2d 358, 363 (Ala. 2001) ("The State is immune from suit, and its

---

[6] Though Nigeria argues that since Alabama's General Liability Trust Fund, *see* ALA. CODE § 36-1-6.1, would pay any judgment against the Defendants, they are not entitled to Eleventh Amendment immunity, the Court disagrees. No court since the General Liability Trust Fund was established in 1984 has held that its existence abrogated sovereign immunity for Alabama agencies. That there exists an indemnitor who will pay a judgment against an entity is not sufficient to divest that entity of Eleventh Amendment immunity. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–31 (1997) ("The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party"). If indemnity from a third party does not defeat Eleventh Amendment immunity, indemnity by a different arm of Alabama does not either.

immunity cannot be waived by the Legislature or by any other State authority."). Second, other than its claim for a declaratory judgment, Nigeria brings only state tort claims (or claims for various equitable remedies), immunity from which has not been generally abrogated by Congress.

Nigeria's claim for declaratory judgment suffers the same fate. While the parties spend significant time arguing whether a declaratory judgment can exist as an independent cause of action, the answer is immaterial: the Declaratory Judgment Act of 1934 does not abrogate Alabama's Eleventh Amendment immunity.[7] *See, e.g.*, *Comfort ex rel. Neumyer v. Lynn Sch.*, 131 F. Supp. 2d 253, 256 (D. Mass. 2001) (explaining that 28 U.S.C § 2201 was passed pursuant to Congress' power under the Judiciary Clause, rather than under Section 5 of the Fourteenth Amendment, such that abrogation of Eleventh Amendment immunity was impossible); *Okpalobi v. Foster*, 244 F.3d 405, 432 (5th Cir. 2001) (en banc) (Higginbotham, J., concurring) ("Congress did not and could not have created a generic exception to the Eleventh Amendment for declaratory relief."). Regardless of whether Nigeria satisfies the other jurisdictional requirements of a declaratory action, it nevertheless cannot seek declaratory relief against a State agency that does not consent.

Therefore, Eleventh Amendment immunity drapes these Defendants, and all claims against ASU, and against Ross, Hopper, and Pritchett in their official capacities, are due to be dismissed.

---

[7] While the Defendants focus on Alabama's own Declaratory Judgment Act, Nigeria's complaint clearly specifies that Nigeria asserts a claim "under 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act) and Rule 57, Fed. R. Civ. [P.]" (Doc. 14, para. 35).

That said, Eleventh Amendment immunity does *not* protect Ross, Hopper, or Pritchett in their individual capacities. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) ("[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." (citation omitted)). Instead, the Defendants argue, Article I, § 14, of the Alabama Constitution does.

Section 14 builds a "nearly impregnable" wall of immunity around Alabama's agencies and officials. *Danley*, 212 So. 3d at 122 (quotations and citation omitted). While an "officer or employee may not escape individual tort liability by arguing that his mere status as a state official cloaks him with the state's constitutional immunity[,]" *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989) (quotations and citations omitted), § 14 nevertheless protects officials in their *individual* capacity "when the action is, in effect, one against the State[,]" *id.* (citations omitted); *see also Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978) ("The prohibition of Section 14 cannot be circumvented by suing the official or agent individually." (citation omitted)). To determine if § 14 grants immunity to the Defendants here in their individual capacities, the Court would need to determine whether Nigeria's actions against them are, in effect, against Alabama (vis-à-vis ASU) itself.

But immunity is "an affirmative defense that the defendant must plead and prove." *Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 695 (Ala. 2000). The Defendants do not argue that Nigeria's claims against Ross, Hopper, and Pritchett in their individual capacities are, in fact, actions against the State. They do not argue that any judgment for Nigeria "would directly affect a contract or property right of the State, [that] the [Defendants are] simply a conduit through which [Nigeria] seeks recovery of damages

9

from the State, [or that] a judgment against the [Defendants] would directly affect the financial status of the State treasury." *Danley*, 212 So. 3d at 124 (quotations and citations omitted). Merely asserting the conclusion that § 14 here protects the Defendants in their individual capacities does not convince the Court that is so. The Defendants do not meet their burden, and so are not entitled to § 14 protection in their individual capacities.[8]

Still, the Defendants soldier on, arguing that if they cannot lay under Eleventh Amendment nor § 14 immunity, that they are still entitled to *State-agent* immunity in their individual capacities. Under Alabama law, a state agent is immune from a claim in his personal capacity when the claim's underlying conduct is based upon the agent's exercise of "judgment in the administration of a department or agency of government, including, but not limited to, examples such as . . . hiring, firing, transferring, assigning, or supervising personnel[.]" *Ex parte Butts*, 775 So. 2d 173, 177–78 (Ala. 2000) (quotations, citation, and numbering omitted).[9]

To enjoy such immunity, the Defendants first "bear[] the burden of demonstrating that [Nigeria's] claims arise from a function that would entitle [them] to immunity." *Danley*, 212 So. 3d at 130 (quotations and citation omitted). If the Defendants satisfy that burden, "the burden then shifts to [Nigeria] to show that" an exception to State-agent immunity applies instead. *Id.* (quotations and citation omitted). Alabama recognizes two

---

[8] Because the Court finds the Defendants have failed to meet their burden to demonstrate that § 14 protects them, the Court need not address the parties' arguments about whether any *exception* to § 14 applies instead.

[9] A state agent may be entitled to such immunity in several other situations, but those are not of relevance here. *See Butts*, 775 So. 2d at 177–78.

10

exceptions: when the United States Constitution, Alabama Constitution, or Alabama laws, rules, or regulations "promulgated for the purpose of regulating the activities of a governmental agency require" non-immunity; or when the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* (quotations and citation omitted). Given the difficulty of meeting these burdens on the pleadings alone, the Alabama Supreme Court cautions that "normally the determination as to the existence of such a defense [as State-agent immunity] should be reserved until the summary-judgment stage, following appropriate discovery." *Odom v. Helms*, 314 So. 3d 220, 229 (Ala. 2020) (quotations and citation omitted). Indeed, it is the "rare case involving the defense of State-agent immunity that would be properly disposed of by" a motion to dismiss. *Ex parte Sawyer*, 984 So. 2d 1100, 1109 (Ala. 2007) (alterations adopted) (quotations and citation omitted).

This is not one of those rare cases. The Defendants do not satisfy their burden to demonstrate that Nigeria's claims arise from a function that would entitle them to immunity. Though the Defendants correctly identify Alabama State-agent immunity law (bolding several sections of a lengthy block quote they believe apply) and also nakedly assert that they are "ASU officials who are charged with overseeing the overall operations of the university and managing the university's finances[,]" (doc. 17 at 7), they do not connect the two. They supply no explanation for how Nigeria's claims arise out of their discretionary authority. Merely asserting that the Defendants "oversee[] the overall operations of the university" and manage its finances does not elucidate how Nigeria's

*specific* claims emerge out of that authority.[10] Perhaps the Defendants can prove later that they are entitled to State-agent immunity—but at this early juncture, the Court cannot tell which University operations these Defendants oversee, which finances they manage, or how and to what extent they exercise their authority to give rise to Nigeria's claims.[11] That ambiguity dooms any claim to State-agent immunity, and so Nigeria's claims against Ross, Hopper, and Pritchett in their individual capacities go forward.[12]

## IV. CONCLUSION

Accordingly, it is

ORDERED that the Defendants' motion to dismiss (doc. 17) is GRANTED to the following extent:

> a) Claims One, Two, Three, Four, and Five as to Defendant ASU are DISMISSED. With no remaining claims asserted against it, ASU is DISMISSED as a party to this case.

---

[10] It is not even clear that all the bolded sections in the Defendants' supplied block quote directly relate to the assertion of their authority. The Defendants assert that they oversee operations and finances, but some of the bolded language relates to hiring, firing, and managing personnel. The Defendants do not explain that the two are necessarily related.

[11] That the Court cannot, of course, underlines the difficulty of determining this issue on a motion to dismiss. The Defendants likely need *evidence* of their respective authorities and discretion (or lack thereof), inappropriate to introduce or consider on a motion to dismiss. *Cf. Ex parte Wood*, 852 So. 2d 705, 709–12 (Ala. 2002) (holding as insufficient to satisfy the defendant's burden under *Butts* an affidavit that merely listed some of his duties and "state[d] in conclusory terms that his duties required him to exercise his judgment and discretion"); *Ex parte Est. of Reynolds*, 946 So. 2d 450, 453–55 (Ala. 2006) (detailing the extensive evidence in support of the defendants' respective authorities and the guidelines and discretion under which they operated).

[12] The Defendants argue, in the alternative, that the Court should decline supplemental jurisdiction over Nigeria's state law claims. While Nigeria did assert that this Court's jurisdiction over those claims emerged out of its supplemental jurisdiction under 28 U.S.C. § 1367, the Court need not take Nigeria's word for it. Even though no federal claim will proceed here, the Court has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332, and so need not exercise supplemental jurisdiction.

    b) Claims Three, Six, and Seven as to Defendants Ross, Hopper, and Pritchett are DISMISSED to the extent that they are brought against the Defendants in their official capacities.

It is further

ORDERED that the Defendants' motion to dismiss is DENIED in all other respects.

DONE this 26th day of May, 2022.

                                    /s/ Emily C. Marks
                             EMILY C. MARKS
                             CHIEF UNITED STATES DISTRICT JUDGE