IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FEDERAL REPUBLIC OF NIGERIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:21-cv-572-ECM |
| ) | [WO] |
| QUINTON T. ROSS, JR., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Pending before the Court is the Motion for Summary Judgment filed by the Defendants Dr. Quinton T. Ross ("Ross"), William Hopper ("Hopper"), and Alondrea Pritchett ("Pritchett") (collectively "Defendants"). (Doc. 33). At issue are Federal Republic of Nigeria's ("Nigeria" or "Plaintiff") claims of unjust enrichment against Ross, Hopper, and Pritchett in their individual capacities and claims of negligent or wanton hiring, retention, supervision, and monitoring against Ross and Hopper in their individual capacities. After carefully reviewing the Defendants' motion for summary judgment, the Plaintiff's response to the motion, and the evidentiary materials, the Court concludes that the motion is due to be GRANTED.

## II. JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element

2

of the case." *Hornsby-Culpepper*, 906 F.3d at 1311.  The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252.  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.*  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. FACTS

In 2013, Nigeria began to pay the costs of attendance for a group of Nigerian students enrolled at Alabama State University ("ASU").  A dispute began over some residual scholarship funds from those payments in the amount of around $202,009.90.  In 2016, the group of Nigerian students filed a lawsuit against ASU in the Middle District of

Alabama over the handling of these funds. *Jumbo v. Ala. State Univ.*, No. 2:16-cv-702 (M.D. Ala. July 18, 2018).

On August 7, 2017, during the students' litigation, Raymond Brown ("Brown") from the Office of the Special Adviser to the President on Niger Delta—the Nigerian office responsible for the students' sponsorship—emailed Leon Wilson, the former president of ASU, with instructions to suspend the process of remitting $201,458.90 in residual funds to Nigeria, "pending the determination of the actual amount outstanding with [ASU]."[1] (Doc. 39-25).

Meanwhile, the Nigerian students' case proceeded. On August 22, 2017, the Court ordered ASU to remit the residual funds to the Court. That same day, counsel for ASU Kenneth Thomas ("Thomas") emailed Brown that the "residual funds owed to the Nigerian Government total[ed] $202,009.90." (Doc. 39-26). He asked that Nigeria advise ASU on or before September 8, 2017 of any objection to ASU's remittance of the funds to the Court. Thomas asked again on September 13, 2017 that Nigeria inform ASU of any objection to the remittance by September 20, 2017. On October 3, 2017, Brown emailed Thomas that a delegate would be visiting the school in October to discuss the residual funds. There is no indication, however, that Nigeria responded to Thomas' requests for objection.

The Court granted summary judgment in the students' case in favor of ASU and dismissed the students' claims. On July 18, 2018, Nigeria's then-counsel Leah Chege

---

[1] The email also informed Mr. Wilson that an audit delegation from Nigeria would be visiting soon to conduct an investigation. (Doc. 39-25). While the record shows multiple correspondence regarding visits of audit delegations, it is unclear how many visits came to fruition or their outcomes.

4

instructed ASU to "hold the [funds] in [their] trust account," "not contact [Nigeria] under any circumstance," and "await further instructions." (Doc. 39-33). The Court remitted the funds to ASU after what the Court described as "effectively a non-response" by Nigeria. (Doc. 39-29). The Court then said:

> Should [Nigeria] feel it is entitled to any of the funds, its remedy is to file whatever action it deems necessary. However, as no controversy between ASU and [Nigeria] is before this Court and because [Nigeria] is a non-party to the suit at bar, the Court has no current authority over this issue.

(Doc. 39-29). After ASU's legal department received the funds from the Court, they gave the funds to Hopper, who then placed them into an ASU account.

Two and a half years passed. On February 24, 2021, counsel for Nigeria reached out to ASU and asked them to "forward draft in said amount of $202,009.50 or greater to our office." (Doc. 39-1). Thomas responded to this request and informed Nigeria that ASU would not comply with Nigeria's demand. He then said that "all funds remitted to ASU by the Nigerian government ha[d] been credited against the attorney fees and expenses incurred in the defense of [the previous] lawsuit[.]" (Doc. 39-32).

On September 24, 2021, Nigeria filed the instant action. This Court dismissed ASU as a defendant, as well as the Plaintiff's claims against Ross (ASU President), Hopper (ASU V.P. of Business and Finance), and Pritchett (ASU Comptroller) in their official capacities. All that remain are claims for unjust enrichment against Ross, Hopper, and Pritchett in their individual capacities, and claims for negligent or wanton hiring, retention, supervision, and monitoring against Ross and Hopper in their individual capacities.

## V. DISCUSSION

Ross, Hopper, and Pritchett bring a variety of arguments for why summary judgment should be granted. First, the Defendants argue that state-agent immunity precludes liability in their individual capacities. Second, they contend that the statute of limitations bars these claims. Third, they assert that the doctrine of unclean hands would make these claims inequitable. Finally, they argue that Nigeria has not brought forth affirmative evidence to support a claim of unjust enrichment or negligent or wanton hiring, retention, supervision, and monitoring against any of the Defendants in their individual capacities. The Court agrees that there is insufficient evidence to support a claim of unjust enrichment or negligent or wanton supervision against these Defendants in their individual capacities.

### A. Unjust Enrichment

A claim of unjust enrichment under Alabama law[2] requires the plaintiff to show that: "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (citation omitted). Further, "[o]ne is unjustly enriched if his retention of a benefit would be unjust." *Id.* at 145–46 (citing *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)). The retention of a benefit is unjust if:

---

[2] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties agree that Alabama law applies.

> (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.

*Id.* (citing *Jordan*, 705 So. 2d at 458).

Nigeria must make two showings to prevail on a claim for unjust enrichment. "First, it must establish that [the Defendants were] 'enriched'—i.e., that [they] knowingly accepted and retained a benefit provided by [Nigeria], which had a reasonable expectation of compensation." *Pentagon Fed. Credit Union v. McMahan*, 343 So. 3d 485, 488 (Ala. 2021) (citing *Matador Holdings, Inc.*, 77 So. 3d at 145). "If [Nigeria] makes that showing, it must next demonstrate that [the Defendants] would be 'unjustly' enriched if [they] were awarded the disputed [funds]." *Id.* Whether the Defendants were unjustly enriched turns on whether Nigeria acted under "a mistake of fact or in misreliance on a right or duty," *id.* (citations omitted), or whether the Defendants "engaged in unconscionable conduct," like "fraud, coercion, or abuse of a confidential relationship," *Matador Holdings, Inc.*, 77 So. 3d at 145 (citation omitted).

Nigeria's claim for unjust enrichment fails at the first element. The Defendants argue that there is no evidence that Ross, Hopper, or Pritchett were unjustly enriched by the remitted funds. In support of their position, they note that ASU obtained the funds in question by a Court Order, not by any action of Ross, Hopper, or Pritchett. (Doc. 35-14). Further, they present evidence that the money was placed and held in an account in the name of ASU, not a personal account of Ross, Hopper, or Pritchett. (Doc. 35-19 at 8; Doc.

7

35-20 at 8, 13). Nigeria asserts that the Defendants used the funds to pay themselves salaries and bonuses, and that the funds generated interest for the Defendants. Nigeria points to no evidence in the record, however, to support its assertion. While the record leaves some discrepancy as to how these funds were ultimately used by ASU, it lacks any evidence that they benefitted Ross, Hopper, or Pritchett individually.[3]

Nigeria fails to point to any evidence that the Defendants knowingly accepted and retained a benefit provided by Nigeria. Because there is no evidence that the Defendants were enriched, the claim fails on its first element. Accordingly, Nigeria's claims of unjust enrichment against Ross, Hopper, and Pritchett are due to be DISMISSED.[4]

### B. Negligent or Wanton Hiring, Retention, Supervision, and Monitoring

The Defendants argue that Nigeria has not brought forth sufficient evidence of underlying wrongdoing to support a claim of negligent or wanton hiring, retention, supervision, and monitoring. For the reasons stated below, the Court agrees.

---

[3] Thomas' March 4, 2021 letter represents that the funds were credited towards legal fees incurred in the previous lawsuit. (Doc. 39-32). Hopper testified that he placed the funds in a general account, and at first, he said that they remained in that account. (Doc. 39-35 at 8). Hopper then clarified that "conceptually" the funds could have been spent, as general fund money was regularly spent by ASU. (Doc. 39-35 at 11). Pritchett, meanwhile, testified that the funds were placed into a "separate," "public-funds-type" checking account set up by Hopper, and that the funds still "should be" in that separate account. (Doc. 39-36 at 11, 13–14). Regardless, both testified that the accounts were ASU's accounts, not any of the Defendants.

[4] Nigeria requested that the Court declare that a constructive trust began on August 22, 2017—the day ASU remitted the money to the Court. However, the Defendants correctly noted in their brief in support of their motion for summary judgment that a constructive trust is an equitable remedy, "and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing." *Radenhausen v. Doss*, 819 So. 2d 616, 620 (Ala. 2001). Because the underlying claims of unjust enrichment and negligent or wanton supervision are due to be dismissed, there is no independent wrongdoing that would warrant a remedy of constructive trust.

In a claim for negligent supervision, "a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013) (citation omitted). A "party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees." *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1098 (citation omitted). To satisfy this requirement, "[Nigeria] must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999)); *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 720–21 (11th Cir. 2011) (per curiam) (holding that the plaintiff's negligent supervision claim failed as a matter of law because the plaintiff failed to establish that the employees committed any tort under Alabama law).[5]

Although not addressed by the parties, the case law demonstrates that to succeed on a claim of negligent or wanton supervision, there must be an employer-employee relationship. *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001) ("Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a[n employer-employee] relationship.").[6] ASU is the employer of Hopper and Pritchett, and ASU is no longer a party to this case. Ross and Hopper are merely supervisors, and "Alabama law does not recognize a cause of action against a supervisor

---

[5] While not binding authority, the Court finds it persuasive.

[6] While not binding authority, the Court finds it persuasive.

9

for that supervisor's negligent training or supervision of a subordinate." *Hand v. Univ. of Ala. Bd. of Trustees*, 304 F. Supp. 3d 1173, 1182 (N.D. Ala. 2018) (citing *Doe v. City of Demopolis*, 799 F.Supp.2d 1300, 1312 (S.D. Ala. 2011). "[A] supervisor is not the [employer] of a subordinate, nor is the subordinate the [employee] of the supervisor." *Rogers v. Alabama*, No. 21-CV-01065, 2022 WL 1032783, at *9 (N.D. Ala. Apr. 6, 2022).[7]

In any event, there is also insufficient evidence of previous incompetence to put Ross and Hopper on notice of the alleged incompetence of their subordinates. Nigeria's amended complaint (the operative complaint) alleges that Ross and Hopper failed to properly instruct their subordinates as to their duties to "protect, preserve, and maintain all scholarship funds," to account for all financial transactions involving the funds, and to "take all reasonable measures to ensure that the said scholarship funds remained intact" for Nigeria's benefit. (Doc. 15 at 13, 14). They allege that the Defendants breached their duty by spending the funds for ASU's benefit. *Id.* Nigeria also asserts that Ross negligently supervised Hopper and Pritchett by failing to instruct them to immediately pay the funds to Nigeria when requested in February of 2021. (Doc. 39 at 25). Nowhere does Nigeria point to evidence of previous incompetence that would put Ross and Hopper on notice of the alleged wrongdoing or incompetence. *See Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1289 (N.D. Ala. 2013) (finding that the plaintiffs failed to point to evidence

---

[7] While not binding authorities, the Court finds them persuasive.

in the record that established that the defendant was aware of the alleged incompetence of its employees).[8]

Nigeria's claim for negligent or wanton supervision also fails because Nigeria has not established an underlying common-law tort. As Nigeria acknowledges in its brief, the only claim remaining before the Court that could form the basis for negligent supervision is its claim of unjust enrichment against the Defendants, and for the reasons stated above, that claim is due to be dismissed. While Nigeria argues in its brief that the Defendants' conduct "amounts to conversion" and that they "conspired together" to withhold the funds from Nigeria, (doc. 39 at 18, 25), they did not plead any claim in their amended complaint against these Defendants other than unjust enrichment (*see generally* doc. 15). A plaintiff "may not 'raise new claims at the summary judgment stage.'" *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam)). Because the unjust enrichment claim fails as a matter of law, so too does Nigeria's claim of negligent or wanton supervision.

For these reasons, the Defendants' motion for summary judgment is due to be GRANTED as to Nigeria's claims of negligent or wanton hiring, retention, supervision, and monitoring against Ross and Hopper.[9]

---

[8] While not binding authority, the Court finds it persuasive.

[9] The Court pretermits discussion of state-agent immunity, the statute of limitations, and the doctrine of unclean hands.

## VI. CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' Motion for Summary Judgment (doc. 33) is GRANTED, and the Plaintiff's claims are DISMISSED with prejudice.

A separate Final Judgment will enter.

Done this 19th day of October, 2023.

                                        /s/ Emily C. Marks
                                 EMILY C. MARKS
                                 CHIEF UNITED STATES DISTRICT JUDGE